**In re Paul A. HARRIS, Debtor.**

No. 05–12973–MWV.

United States Bankruptcy Court,
D. New Hampshire.

July 27, 2006.

Grenville Clark, Esq., Gray, Wendell & Clark, PC, Manchester, NH, for Debtor.

Edmond J. Ford, Esq., Ford, Weaver and McDonald, PA, Portsmouth, NH, for Michael S. Askenaizer, Chapter 7 Trustee.

Kevin Devine, Esq., Devine & Nyquist, P.A., Manchester, NH, Timothy P. Smith, Esq., for Joel B. Alvord.

Geraldine Karonis, Esq., Office of the United States Trustee, Assistant United States Trustee.

## MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The Court has before it the "Debtor's Motion to Convert Case to One Under Chapter 13." Paul Harris (the "Debtor") seeks to convert pursuant to 11 U.S.C. § 706(a). The Chapter 7 trustee (the "trustee"), the United States Trustee, and Joel B. Alvord have filed objections to the Debtor's motion. The Court held a full-day evidentiary hearing on April 17, 2006. For the reasons set forth below, the Debtor's motion to convert to chapter 13 is denied.

## JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## BACKGROUND

The Debtor filed a voluntary Chapter 7 petition on July 28, 2005, and filed his schedules and statement of financial affairs on August 25, 2005. Several corporations formed and held by the Debtor are relevant hereto. In January 2003, the Debtor incorporated Indoor Garden Systems of New Hampshire, Ltd. ("Indoor Garden Systems"). Indoor Garden Systems developed and sold various gardening devices,

such as the "StandUp Garden" and the "Flower Wall."

Another corporation formed by the Debtor, Lochinvar Holdings, Ltd. ("Lochinvar"), existed for the purpose of owning the Debtor's residence.[1] In addition, Lochinvar loaned a total of $150,000 to Indoor Garden Systems between October 2002 and March 2003. In exchange, Lochinvar was granted a security interest in the assets of Indoor Garden Systems. The Debtor, too, loaned at least $200,000 to Indoor Garden Systems between August 2002 and March 2003, and, as evidenced by security agreements entered into evidence, he took a security interest in the assets of Indoor Garden Systems.

Joel Alvord also invested in Indoor Garden Systems. Over four transactions between December 2003 and August 2004, Mr. Alvord loaned a total of $485,000, in exchange for which he was purportedly granted a priority security interest in the assets of Indoor Garden Systems. However, the Debtor apparently never revealed to Mr. Alvord that the Debtor, himself, held security interests senior to those of Mr. Alvord. Shortly before filing for bankruptcy protection, the Debtor foreclosed on the notes he held, transferring the assets of Indoor Garden Systems to himself. Several days post-petition, the Debtor wrote to Mr. Alvord, apprising him of the Debtor's foreclosure of the assets and the dissolution of Indoor Garden Systems, but neglecting to mention the recently filed bankruptcy case.

Days after filing for bankruptcy protection, the Debtor formed a new corporation, Garden Innovations, Ltd., which, like the pre-petition corporation Indoor Garden Systems, assembles and sells gardening devices such as StandUp Gardens. The

1. Since filing for bankruptcy protection, the home owned by Lochinvar was foreclosed upon, but another corporation formed post-

petition by the Debtor, Limestone Real Estate, Inc., was the foreclosure sale buyer.

Debtor produces these StandUp Gardens using the same inventory and mold that were the property of Indoor Garden Systems until the Debtor's pre-petition foreclosure made him, personally, the owner of those assets. On Schedule B, the Debtor listed "Inventory, tools, & mold formerly belonging to Indoor Garden Systems, Ltd." as having a value of $8,600. As the owner of these assets at the time he filed his bankruptcy petition, the inventory and mold became property of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1). Soon after the petition date, without seeking permission from, or even notifying, the trustee or the Court, the Debtor "transferred" the inventory and mold to Garden Innovations, his post-petition corporation, in exchange for founders stock, though the Debtor testified that this transaction is not memorialized in writing. At the April 17 hearing, the Debtor estimated that $85,000 has been deposited into Garden Innovations' bank account, revenue generated by post-petition sales of StandUp Gardens.

On February 16, 2006, pursuant to Federal Rule of Bankruptcy Procedure 2004, an examination of the Debtor was conducted at which much of the information discussed above came to light. Less than one month later, Mr. Alvord filed a complaint seeking, *inter alia*, to determine that the debt owed to Mr. Alvord is non-dischargeable pursuant to section 523 or, alternatively, to deny the Debtor a discharge pursuant to section 727. A week later, the Debtor filed his motion to convert to Chapter 13. The Court held an evidentiary hearing on April 17, 2006, at which the Debtor testified at length under oath. The Court took this matter under advisement at the close of the hearing.

### DISCUSSION

#### A. The Right to Convert is Not Absolute

The Debtor seeks to convert his bankruptcy case from Chapter 7 to Chapter 13 pursuant to section 706(a),[2] which provides:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

While a debtor's right to convert to Chapter 13 under section 706(a) has sometimes been described as "absolute," *see, e.g.,* 6 Lawrence P. King, *Collier on Bankruptcy* ¶ 706.01 (15th ed. rev.2006), the First Circuit Court of Appeals has held that a court may deny a debtor's "motion to convert where the court determines that the debtor engaged in bad faith conduct." *In re Marrama*, 430 F.3d 474 (1st Cir.2005), *cert. granted*, —— U.S. ——, 126 S.Ct. 2859, 165 L.Ed.2d 894 (2006).

In *Marrama*, the debtor transferred residential real estate to a trust seven months before filing for bankruptcy protection and designated himself sole beneficiary and his girlfriend as trustee. In his statement of financial affairs, the debtor disclosed that he was the beneficiary, listed the value of the trust's *res* as zero, and denied making any property transfers in the year preceding bankruptcy. The debtor maintained that the omission of the transfer was attributable to "scrivener error" and that he did not attempt to conceal the property, as he had disclosed the property's existence. *Id.* at 481–82. The bankruptcy court, without holding an evidentiary hearing, denied the debtor's motion to convert, and the Bank-

---

**2.** All references to the "Bankruptcy Code" or to specific sections are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. § 101, *et seq.*

ruptcy Appellate Panel and the Court of Appeals affirmed. The debtor's concealment of the transfer, his valuation of the *res* at zero, and his attempted conversion to chapter 13 were done with the intention of keeping the property from creditors. *Id.* at 482–83. Explaining that bankruptcy protection "is to be accorded only to *honest* debtors," the First Circuit concluded that a debtor's right to convert under section 706(a) is not without limitation, and a bankruptcy court may deny a debtor's motion to convert "where the court determines that the debtor engaged in bad faith conduct." *Id.* at 480–81. Such a determination, based on the totality of the circumstances, "is a fact-intensive determination to be made on a case-by-case basis." *Id.* at 482. "In assessing the totality of the circumstances, the bankruptcy court may consider, *inter alia*, (i) the accuracy of the debtor's financial statements; (ii) any other attempts by the debtor to mislead the bankruptcy court or manipulate the bankruptcy process; (iii) the type of debt sought to be discharged; (iv) whether the debt is dischargeable in chapter 7; and (v) the debtor's motivation in seeking to convert to chapter 13." *Id.*

### B. Indicia of Bad Faith

#### 1. Undervaluation of Assets

■ On Schedule B, the Debtor valued the "Inventory, tools, & mold formerly belonging to Indoor Garden Systems, Ltd." at $8,600. At the April 17, 2006, hearing, the Debtor explained that he considered portions of the inventory to have a "negative value" and, thus, his valuation reflected, in part, potential disposal costs. Rather than disposing of the mold and inventory, though, the Debtor, soon after filing his bankruptcy petition, incorporated Garden Innovations and, after "transferring" the assets to his new corporation in exchange for stock, continued to generate revenue from sales of StandUp Gardens assembled from the scheduled inventory. At the Rule 2004 examination, the trustee instructed the Debtor to cease selling Standup Gardens or otherwise liquidating the inventory, and the Debtor agreed to this. However, one month later, at the April 17 hearing, the Debtor admitted that he continued assembling and selling Stand-Up Gardens, and had more sales in the works. The Debtor estimated that Garden Innovations had generated $85,000 from post-petition sales of StandUp Gardens.

■ "The bankruptcy court is entitled to demand utmost good faith and honesty from debtors in the preparation of their schedules and statements of affairs." *In re Marrama*, 430 F.3d at 482. The Court is unconvinced that the Debtor honestly believed the assets to have little value or that his valuation was partially based on disposal costs. Is the Court to believe that the Debtor, on his way to the dump with the inventory, suddenly realized their value? The Debtor has generated at least $85,000 from assets he valued at $8,600. This undervaluation and the Debtor's furtiveness in forming a new corporation a few days post-petition and transferring his assets to that corporation indicate that the Debtor had his own plans for these assets when he filed his bankruptcy petition.

#### 2. Misrepresentations Under Oath

The Debtor gave a deposition under oath on April 2, 2004, in connection with a New Hampshire state court civil case, at which he made numerous misrepresentations. First, at the deposition, the Debtor testified that neither he nor any company he owned or controlled held a bank account other than one held by Lochinvar. However, at the time of the deposition, Indoor Garden Systems maintained an active account with the Community Bank and Trust Company. At the April 17,

2006, hearing, the Debtor admitted that his testimony at the deposition and the existence of the bank account are "hard to reconcile."

Second, at the deposition the Debtor testified that, other than stock in the Harris Group and Lochinvar, he had no investments and owned no other stocks. However, on Schedule B he stated that he owned "100% of stock of Indoor Garden Systems, Ltd." In light of the fact that Indoor Garden Systems was incorporated by the Debtor in 2003, with the Debtor as shareholder, it appears that the Debtor's testimony at the deposition was false.

Finally, at the deposition, the Debtor testified that no entity owed either he or Lochinvar any money. However, as discussed above, four promissory notes dated August 20, 2002, October 14, 2002, March 10, 2003, and March 21, 2003,[3] reveal that, at the time of the deposition, Indoor Garden Systems owed the Debtor $200,000 and Lochinvar $150,000. At the April 17, 2006, hearing, the Debtor stated that the discrepancy was "inadvertent," explaining that at the deposition he did not make the association between an entity he owned and himself personally. In a different case this might be a credible explanation, however, this Debtor has revealed himself to be rather sophisticated when it comes to managing multiple corporations that do business with one another and with himself.[4]

### 3. The Debtor's Dealings with Joel Alvord

Over four transactions, Joel Alvord invested a total of $485,000 in Indoor Garden Systems. The four promissory notes memorializing these transactions grant Mr. Alvord "a priority security interest in the assets of [Indoor Garden Systems], including equipment, inventory, accounts receivable and intellectual property." (Alvord.Exs.111–114.) However, apparently unknown to Mr. Alvord, the Debtor had already granted to himself security interests in the assets of Garden Innovations. Two promissory notes showing Indoor Garden Systems as the "borrower" and the Debtor as the "lender" are dated August 20, 2002 and March 21, 2003, each in the amount of $100,000. (Alvord Exs. 105 & 108.) Also, two promissory notes, each in the amount of $75,000, showing Indoor Garden Systems as the "borrower" and Lochinvar as the "lender" are dated October 14, 2002, and March 10, 2003. These security interests are senior to those granted to Alvord.

On August 2, 2005, less than a week after filing for bankruptcy protection, the Debtor wrote a letter to Alvord explaining that he "had no alternative but to protect my secured position with respect to Indoor Garden Systems, Ltd. Therefore effective July 28th I have foreclosed on the defaulted secured loans I made to the company

---

3. There are apparently additional promissory notes that were not admitted into evidence.

4. For instance, the Debtor's ability to at least make it appear that he conducted business between he and Indoor Garden Systems at arm's length is evidenced by a July 25, 2005, letter from the Debtor to Indoor Garden Systems in which he wrote:

   "As you know from my letters to you of June 15, 2005 and June 30, 2005 and previous, you are presently in default under the terms of a certain promissory note in the

face amount of $100,000 made by you on February 21, 2003 and under terms of a Security Agreement and Financing Statement dated February 21, 2003 as well as other previous and subsequent notes and agreements.... We hereby make demand for immediate payment for the balance in full, failing which we are repossessing the collateral described at paragraph 1 of the Security and Financing Agreement."
(Alvord Ex. 104.)

and personally taken possession of the company's assets . . . ." (Alvord Ex. 102.) July 28 was the day the Debtor filed his bankruptcy petition, yet the letter written a few days later makes no mention of this.

### 4. Other Indicia of Bad Faith

In addition to the matters discussed above, the Court considers a few other of the Debtor's practices to be indicative of the Debtor's lack of good faith and forthrightness. First, during most of the time period discussed herein, the Debtor has not had checking or savings accounts in his name. The Debtor testified that he used a credit card to pay his personal expenses and that Lochinvar payed the credit card bill. The Debtor has failed to produce any accounting records of his personal expenditures. Second, the Debtor has a practice of not owning his home in his name. Prior to bankruptcy, the Debtor formed Lochinvar Holdings, Ltd., which owned his home. Post-petition, the home was foreclosed upon but was bought by Limestone Real Estate, Inc., another corporation formed by the Debtor for the purpose of owning his home.[5] The Debtor's aversion to opening bank accounts in his own name, his failure to provide financial records, and his use of corporations to own his home lengthen the shadow of bad faith that the Debtor has cast upon himself.

### CONCLUSION

Whether a debtor has acted in " 'good faith' is a fact-intensive determination to be made on a case-by-case basis." *In re Marrama*, 430 F.3d at 482. The following statement made by the *Marrama* court is equally applicable to this opinion: "The instant case comports in all material respects with the classic profile of playing

fast and loose with the bankruptcy process." *Id.* at 482. While some of the Debtor's actions might appear innocent viewed in isolation, the totality of the circumstances leaves no doubt that the Debtor has exhibited bad faith with respect to this bankruptcy case. This conclusion is reinforced by the Court's opportunity to observe, at length, the Debtor on the witness stand. The Court finds that the Debtor misled this Court by intentionally undervaluing and concealing assets and then covertly using them under the trustee's radar. The Court is equally troubled by the Debtor's multiple misrepresentations made under oath. Finally, the Debtor's conduct with regard to Mr. Alvord, his practice of not having personal bank accounts, not providing financial records, and forming corporations with which to own his home round out this portrait of bad faith.

Finally, the Court does not believe that the Debtor's desire to convert to Chapter 13 is "to allow the debtor to better deal with his obligations, including claims asserted by one Joel Alvord, by proposing a Chapter 13 plan in good faith." (Debtor's Motion to Convert.) The Debtor moved to convert to Chapter 13 only after a wealth of potentially damaging information was elicited from him at the Rule 2004 examination and after Mr. Alvord filed a complaint seeking to deny the Debtor's discharge. The Debtor's motion to convert is another attempted manipulation of the bankruptcy process.

Based on the totality of the circumstances, the Debtor's motion to convert his case to Chapter 13 is denied because the Debtor has engaged in bad faith. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure

---

5. At the April 16, 2006, hearing the Debtor testified that Limestone bought the residence in a valid foreclosure sale in which several bidders participated. The Court has no reason to doubt this.

7052. The Court will issue a separate order consistent with this opinion.